Judge Mills
delivered the Opinion of the Court.
On the 14th December, 1796, the legislature passed an act reciting that Joseph Barnett of Hardin county, had died intestate, leaving but little personal estate, and considerable lands; that he had sold, and not conveyed many of these lands, and others would be lost for the want ef attention, and as no body would administer on his estate, his creditors were suffering. The estate is then vested in certain commissioners by name, who are directed to convey, in the fulfilment of his contracts for land; to sell his personal estate and pay his debts; and if that proved insufficient, to sell, assign, transfer and convey so much of his lands as are necessary for that purpose, on a credit jjy the act directed, and to apply the proceeds in discharge of his debts. The same commissioners were authoized to sue for debts due to the estate, and were made subject to suits by creditors. In short, the commissioners were administrators created by statute with the additional vestiture of real estate and a power over it. See session acts of 1798, page 10.,
In the year 1797, the commissioners sold a tract of land, under the act which had been surveyed, *593 but not patented, and they assigned the plat and cer-tificateto the purchasers, in whose names the patent issued.
Decree of th,e circuit court-
Purchaser in P*’ssession ^Adversary claimants to t°een the” s^ves and' for the success*'ul Purty that he may dissolve his contract of purchase.
Peipurrer in chancery,
The heirs of Barnett, in this cause have impleaded the surviving patentees and the heirs of the deceased, in a suit in equity, to compel a surrender back of the legal estate. Thev do not charge any improper conduct of the commissioners in making the sale, or that it was unnecessary for tire payment of the debts, but rely exclusively on tne ground, that this act was unconstitutional, and that the legislature had no power to take away the estate of their ancestor, and vest it in commissioners, or authorize the sale thereof, and this forms the principal question for our decision.
The court below decided it in favor of Barnett’s heirs-, and decreed to them a conveyance of the estate.
We would here remark that the heirs of Barnett, and these patentees were brought to this controversy by a hill of interpleader, filed by Andrew Rowan, (who has no interest in the title, but lived upon the land under another claim,) alleging that the disputed claim was better than his; that each of the present parties claimed it, and praying that they might b.e compelled to litigate their rights "with each other, and the true owner might assert his claim against him, so that he might thereby get clear of a purchase which he had made of the ad? yerse claim, under which he held the land.
We have no hesitation in saying, that such a bill of interpleader ought not to have been allowed according to the rules and usages of a court of equity.
But yet, as the parties did not meet him by a demurrer, but waiving all, went into this controversy, after making up a proper issue for the purpose, we feel o nr selves bound to decide the controversy disregarding, on the final hearing, the mode by which it was introduced.
As to Rowan, the court below dismissed his bill separately, and we have affirmed that decree, so *594 that he is now as much hors de combat, as if he never entered into it.
Act appointing the commissioners to sell the lands of Joseph Barnett deceased, for payment of his debts, is valid.
Such acts may either appoint tho administrator of the flecedant, or a special commissioner, to make tho sale and conveyance.
*594 This is not the first, nor can we expect it to be the. last case of judicial controversy, arising out of legislative disposition of the real estate of infant heirs. Private acts of this character are numerous, and in aseries of years, many estates will he affected by them, andas many judicial controversies may arise out of them, and whether some of the different classes of them may not turn out to be constitutional violations, may become a serious question to this community. The act now under consideration belongs to the class which have appropriated the estate to the payment of debts.
Lands have been subjected in this State to the payment of debts; of course, they are a fund of credit, under the eye of the contracting creditor, to which.he looks for remuneration. The power of the legislature to subject lands to debts has never been questioned, and has been sanctioned by every department of government. The estate is taken into the hands of the executive officers, sold and conveyed, and the debtor is stripped of his title without his express assent at the moment, and not only the adult contracting debtor is thus reached, but the estate is pursued in the hands of the infant heir, to whom it has descended, and it is applied by the sheriff to the payment of the debts of the ancestor. If this can be done by the sheriff, we perceive no good reason why an administrator or commissioner, may not he substituted for the sheriff, and why the modus operandi may not be changed, while the rights of all the parties are preserved inviolate. The estate in this case was liable, and pledged by the law to the creditors. It might hav.e been reached by other modes of proceeding, more costly to the parties, and more dilatory, and not more safe. We, therefore, believe it competent for the legislature to apply this special remedy, and subject the estate.
We have said this is not the first case of the kind. In Kibby vs. Chitwood’s adm’rs. 4 Mon. 90; a question, the same in principle, has been decided, and *595 It has there been held that when real estate ought, by the general laws, to be sold for the payment of debts, the legislature might subject it by a special act for that purpose, when the rights of the parties concerned, were held inviolate. That case settles this, it is true there the estate was sold by the administrators, here by commissioners. There a mere authority was given, here the estate, by the terms of the act, is vested in trust. The difference between the administrator and commissioner cannot be material.
Query, whether such a statute can vest the legal estate in the commissioner, or only authorize him to sell and convey the estate descended to, and remaining in,the infants. ■
Query, of the validity of statutes authorizing the the sale of the lands of infants for any other purpose than the payment of debts.
Crittenden, for appellants.
And we have hot thought it necessary to enquire, whether the act in this case really stripped the heirs of Barnett of their estate, and conveyed it to the commissioners. For if it be granted that the legislature could not, and of course did not do this, still there is an ample grant of authority in the act to the commissioners to sell and convey, and if such authority can be given, and the estate would pass thereby as held in Kibby vs. Chitwood’s adm’rs, it is wholly immaterial whether the title did, or did not vest in the commissioners. The act might be effectual on this point, though it was inoperative in others.
We are still disposed to coniine this decision exclusively to one class of cases, to-wit: to the subjecting lands to debts by special act, which before were subject to the same debts by the general laws of the land, without affecting materially the rights of the parties; and we would not be understood as giving our sanction to other appropriations of the real estate of minors, for other purposes. It will be time enough to decide upon other classes when they occur.
The decree of the court below in favor of Barnett’s heirs, compelling the patentees and their heirs to convey the land, must, therefore, be reversed with costs, and the cause be remanded with directions to dismiss their bill of interpleader with costs.